**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------x

**RONALD PIEDMONTE,**

**Plaintiff,**

**1:26-cv-08434**

**COMPLAINT**

**-against-**

**SYNCHRONY BANK, and**
**TRANS UNION, LLC,**

**Defendants.**

---------------------------------------------------------x

## PRELIMINARY STATEMENT

1. Plaintiff RONALD PIEDMONTE ("Plaintiff"), by and through his undersigned counsel, Mallon Consumer Law Group, PLLC, brings this action against Defendants SYNCHRONY BANK ("Synchrony") and TRANS UNION, LLC ("Trans Union"), and alleges the following upon personal knowledge as to himself and his own acts, and upon information and belief as to all other matters:

2. Plaintiff brings this action against Defendant Synchrony for violating the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681s-2(b), by failing to conduct a reasonable investigation of Plaintiff's dispute regarding a credit account that was never his, and by verifying a balance and delinquency on an account Synchrony had already charged off and sold, notwithstanding Synchrony's inability, over the course of several years, to produce any signed application or agreement establishing that Plaintiff was the accountholder.

3. Plaintiff brings this action against Defendant Trans Union for violating the FCRA, 15 U.S.C. §§ 1681e(b) and 1681i, and New York General Business Law ("NY GBL") § 380 et seq., by failing to follow reasonable procedures to assure the maximum possible accuracy of Plaintiff's consumer reports and by repeatedly failing to conduct reasonable reinvestigations of

the same disputed account across multiple dispute cycles spanning more than three years, culminating in Trans Union's July 2, 2026 verification of the disputed tradeline as accurate notwithstanding Plaintiff's submission of a court order dismissing, with prejudice, the collection action on the same account.

4. Plaintiff's claim under NY GBL § 380 et seq. is asserted against Trans Union only and arises from the same conduct described herein. As a direct and proximate result of Defendants' unlawful actions, conduct, and omissions, Plaintiff has suffered actual damages, including but not limited to adverse impact on his credit rating and credit score, being subjected to inferior credit terms, expenditure of time and resources, and emotional distress.

## PARTIES

5. Plaintiff, a natural person, resides in New York County, New York, and qualifies as an individual "consumer" within the meaning of the FCRA and the NY GBL. *See* 15 U.S.C. § 1681a(c); N.Y. GBL § 380-a(b).

6. Defendant Synchrony Bank is a Utah depository institution, duly authorized and qualified to do business in the State of New York. At all times relevant hereto, Synchrony issued and administered a PayPal-branded credit account (commonly marketed as "PayPal Credit") that is the subject of this action, and qualifies as a "furnisher of information" as contemplated by the FCRA, 15 U.S.C. §§ 1681s-2(a) and (b), that regularly and in the ordinary course of business furnishes information to one or more consumer reporting agencies about consumer transactions or experiences with any consumer.

7. Defendant Trans Union, LLC is a Delaware limited liability company with its principal place of business in Chicago, Illinois, duly authorized and qualified to do business in the State of New York. Trans Union qualifies as a "consumer reporting agency" within the meaning of the FCRA and the NY GBL. *See* 15 U.S.C. § 1681a(f); N.Y. GBL § 380-a(e).

## JURISDICTION AND VENUE

8. The jurisdiction of this Court is conferred by 15 U.S.C. § 1681p and 28 U.S.C. § 1331.

9. This Court has supplemental jurisdiction over the state law claim asserted herein pursuant to 28 U.S.C. § 1367(a).

10. Venue is properly laid pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events giving rise to this action occurred in this District, where Plaintiff resides.

## FACTUAL BACKGROUND

11. On or about March 26, 2020, Synchrony opened a PayPal-branded credit account (the "Account") purportedly in Plaintiff's name, bearing an account number ending in 3192.

12. Plaintiff never applied for, opened, authorized, or used the Account, and never received any benefit from it. The Account does not belong to Plaintiff.

13. The first communication Plaintiff received regarding the Account, a statement dated November 28, 2022, identified the accountholder as "Ron Piemonte," a name Plaintiff has never used or been known by, at an address lacking Plaintiff's apartment number and bearing a four-digit zip code extension that was not associated with Plaintiff's unit.

14. When Plaintiff contacted Synchrony about the Account, Synchrony's collection representatives asked him whether he had ever lived in New Jersey and whether he knew or was related to a woman with the surname Piemonte residing in Sparta, New Jersey. Plaintiff has no such relationship. Upon information and belief, that woman's husband is named Ron Piemonte.

15. In or about May 2023, Plaintiff sent a written request to Synchrony, at the address Synchrony directed, requesting a copy of the original credit account agreement or application bearing his signature, in order to validate that the Account belonged to him. Synchrony received the request on or about May 5, 2023, but never provided any such document or other response.

16. Notwithstanding Plaintiff's request, the Account continued to be reported, and correspondence continued to be sent, under the name "Ron Piemonte." On or about February 28, 2023, Synchrony transferred the balance of the account ending in 3192 to a new account number ending in 4023. Synchrony did not begin using Plaintiff's correct mailing address, including his apartment number, until in or about the spring of 2023, approximately three years after the Account was purportedly opened. At no point did Synchrony change the name associated with the Account to Plaintiff's name.

17. On or about October 27, 2023, Synchrony charged off the Account in the amount of $3,792.33. On or about November 11, 2023, Synchrony sold or otherwise transferred the Account, including all right, title, and interest in the associated balance, to Midland Credit Management, Inc. ("Midland"), notwithstanding the unresolved discrepancies described above.

18. Plaintiff disputed the Account and its associated derogatory tradeline with Trans Union on at least six separate occasions. Trans Union notified Plaintiff that it had completed reinvestigations on or about March 2, 2023, May 30, 2023, November 30, 2024, and January 4, 2025; acknowledged receipt of a further dispute on January 2, 2026; and received the dispute described below on or about June 13, 2026. Each time, Trans Union continued to report the Account.

19. By letter dated June 8, 2026, sent by certified mail, Plaintiff again disputed the Account with Trans Union. Plaintiff explained that the debt was not his, that he had disputed it with Trans Union multiple times, and that the collection action on the Account had been dismissed with prejudice. He enclosed a certified copy of the court's dismissal order, a copy of his driver's license, and proof of his address.

20. Upon information and belief, Trans Union forwarded the June 2026 dispute to Synchrony for investigation. Upon information and belief, Synchrony failed to conduct any reasonable investigation of the dispute, including failing to review its own records reflecting that it had charged off and sold the Account in 2023, Plaintiff's unanswered 2023 validation request, and the persistent name discrepancy associated with the Account, and instead verified to Trans Union that the disputed information was accurate.

21. On or about July 2, 2026, Trans Union issued the results of its reinvestigation to Plaintiff, stating that the Account (identified therein as "SYNCB/PPC") had been "VERIFIED AS ACCURATE," and that Trans Union had updated only the "Date Updated," "Maximum Delinquency," and "Rating" fields.

22. Following the reinvestigation, Trans Union reported the Account as an individual revolving account opened March 26, 2020 and "CLOSED BY CREDIT GRANTOR" on December 29, 2022, with a balance of $2,837, a past-due amount of $297, a pay status of "Account 60 Days Past Due Date," an original charge-off of $0, and a newly added "Maximum Delinquency of 60 days in 07/2026."

23. That reporting was inaccurate and materially misleading, independent of the fact that the Account does not belong to Plaintiff. By July 2026, Synchrony had charged off the Account and sold all right, title, and interest in it to Midland, and Midland's action on the Account had been dismissed with prejudice. Synchrony held no balance, and nothing was past due to it. The tradeline omitted the charge-off and the sale, and the "Maximum Delinquency" date of July 2026 made a stale, disputed delinquency appear current.

24. Before the June 2026 dispute, on or about October 23, 2025, Midland, through its counsel, commenced a collection action against Plaintiff (under the name "Ron Piemonte") in the

Supreme Court of the State of New York, New York County, seeking to collect the balance associated with the Account. Plaintiff appeared pro se and moved to dismiss the action, asserting, among other things, that the Account and associated debt did not belong to him and had never been validated. In response, Midland's counsel affirmed that no signed credit application had been made available for review because one likely did not exist, and asked that the action be discontinued. On April 28, 2026, the court granted Plaintiff's motion on Midland's consent and dismissed Midland's complaint with prejudice.

25. Notwithstanding the dismissal described above, a certified copy of which Plaintiff provided to Trans Union with his June 8, 2026 dispute, Trans Union verified the Account as accurate and has continued to report it.

26. As of August 29, 2026, Trans Union continued to report the Account (identified as "SYNCB/PPC") on Plaintiff's consumer file with a status of "60 days late" and a balance of $2,837, the same figures reflected in Trans Union's July 2, 2026 verification.

27. Upon information and belief, and based on Plaintiff's review of his own consumer credit files, the Account and its associated derogatory tradeline previously appeared on Plaintiff's consumer disclosure reports issued by Equifax Information Services, LLC and Experian Information Solutions, Inc., but, following Plaintiff's June 8, 2026 dispute to all three nationwide consumer reporting agencies, no longer appeared on either such report as of July 13, 2026.

28. On or about November 30, 2024, Trans Union issued a notice indicating completion of its reinvestigation of Plaintiff's then-pending dispute of the Account, and it continued to report the Account. On or about December 6, 2024, Plaintiff, as co-buyer, financed the purchase of a vehicle at an annual percentage rate of 11.24%. Upon information and belief, the lender relied on Plaintiff's consumer reports, which included the inaccurate and derogatory Account. Absent the

Account, Plaintiff would have qualified for a materially lower rate, and the difference will cost him thousands of dollars in additional finance charges over the life of the loan.

29. On or about August 6, 2026, Plaintiff applied for a Upromise credit card issued by Barclays Bank Delaware, and his application was denied. The denial notice identified Trans Union as the consumer reporting agency that provided information influencing the decision, and cited, among other reasons, “recent delinquency indicated on credit bureau” and “history of delinquency on your credit report.” Plaintiff’s Trans Union-based credit score at the time of the denial was reported as 628. Upon information and belief, the “recent delinquency” was the Account, which Trans Union was then reporting as having reached its maximum delinquency in July 2026.

30. On or about September 5, 2026, Bank of America notified Plaintiff that it had decided to close his credit card account ending in 3545, effective September 8, 2026, citing, among other reasons, “current or past delinquency, derogatory public record(s), and/or collection account(s)” and “current or past delinquency with one or more of your creditors.” Bank of America identified Trans Union as the consumer reporting agency that provided the credit score used in its decision, disclosing Plaintiff’s credit score as 628.

31. As a direct and proximate result of Defendants’ conduct described herein, Plaintiff has suffered actual damages, including but not limited to adverse impact on his credit rating and creditworthiness, being subjected to inferior credit terms, expenditure of time and resources in disputing the Account across multiple years and multiple entities, and emotional distress.

## FIRST CAUSE OF ACTION

VIOLATION OF THE FCRA, 15 U.S.C. § 1681s-2(b)
Against Defendant Synchrony Bank

32. Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

33. Synchrony is a furnisher of information to consumer reporting agencies as defined by 15 U.S.C. § 1681s-2.

34. Trans Union, a consumer reporting agency, notified Synchrony of Plaintiff's disputes regarding the Account, including his June 2026 dispute.

35. Upon receiving notification of Plaintiff's dispute, Synchrony willfully (or, in the alternative, negligently) violated 15 U.S.C. § 1681s-2(b)(1)(A) by failing to conduct a reasonable investigation of the disputed information.

36. Synchrony willfully (or, in the alternative, negligently) violated 15 U.S.C. § 1681s-2(b)(1)(B) by failing to review all relevant information regarding Plaintiff's dispute, including but not limited to its own records reflecting that it had charged off and sold the Account, Plaintiff's unanswered written validation request, and the persistent discrepancies in the name and identifying information associated with the Account.

37. Synchrony willfully (or, in the alternative, negligently) violated 15 U.S.C. § 1681s-2(b)(1)(C), (D), and (E) by failing to accurately report the results of its investigation to Trans Union and, to the extent applicable, failing to modify, delete, or permanently block the reporting of the disputed item.

38. Accordingly, Synchrony is liable to Plaintiff for actual, statutory, and punitive damages in an amount to be determined by the trier of fact, as well as for Plaintiff's litigation costs and reasonable attorney's fees, pursuant to 15 U.S.C. §§ 1681n and 1681o.

## SECOND CAUSE OF ACTION

VIOLATION OF THE FCRA, 15 U.S.C. § 1681i
Against Defendant Trans Union, LLC

39. Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

40. Trans Union prepared, compiled, issued, assembled, transferred, published, and otherwise reproduced consumer reports regarding Plaintiff, as that term is defined in the FCRA. *See* 15 U.S.C. § 1681a(d).

41. Such reports erroneously included the Account as a derogatory tradeline belonging to Plaintiff.

42. Trans Union willfully (or, in the alternative, negligently) violated 15 U.S.C. § 1681i(a)(1) by failing to conduct a reasonable reinvestigation of Plaintiff's repeated disputes of the Account.

43. Trans Union willfully (or, in the alternative, negligently) violated 15 U.S.C. § 1681i(a)(4) by failing to review and consider all relevant information submitted by Plaintiff regarding his disputes, including the certified copy of the order dismissing, with prejudice, Midland's collection action against Plaintiff on the same Account, and Plaintiff's explanation that the Account was opened and maintained under a name and address that were not his.

44. Trans Union willfully (or, in the alternative, negligently) violated 15 U.S.C. § 1681i(a)(5) by failing to delete or modify the disputed information after failing to verify its completeness and accuracy.

45. Accordingly, Trans Union is liable to Plaintiff for actual, statutory, and punitive damages in an amount to be determined by the trier of fact, as well as for Plaintiff's litigation costs and reasonable attorney's fees, pursuant to 15 U.S.C. §§ 1681n and 1681o.

## **THIRD CAUSE OF ACTION**

VIOLATION OF THE FCRA, 15 U.S.C. § 1681e(b)
Against Defendant Trans Union, LLC

46. Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

47. Trans Union willfully (or, in the alternative, negligently) violated 15 U.S.C. § 1681e(b) by failing to follow reasonable procedures to assure maximum possible accuracy of the information concerning Plaintiff in the consumer reports it prepared and furnished to third parties, including Barclays Bank Delaware and Bank of America, N.A.

48. Among other things, Trans Union reported in Plaintiff's file an account opened and maintained under a different name ("Ron Piemonte") and, for years, a different address; reported a balance and past-due amount owed to a creditor that had charged off and sold the account years earlier; and reported a July 2026 maximum-delinquency date on an account closed in December 2022.

49. Accordingly, Trans Union is liable to Plaintiff for actual, statutory, and punitive damages in an amount to be determined by the trier of fact, as well as for Plaintiff's litigation costs and reasonable attorney's fees, pursuant to 15 U.S.C. §§ 1681n and 1681o.

**FOURTH CAUSE OF ACTION**
VIOLATION OF NEW YORK GENERAL BUSINESS LAW § 380 ET SEQ.
Against Defendant Trans Union, LLC

50. Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

51. Trans Union prepared, compiled, issued, assembled, transferred, published, and otherwise reproduced consumer reports regarding Plaintiff, as that term is defined in the NY GBL. *See* N.Y. GBL § 380-a(c)(1).

52. Such reports erroneously included the Account as a derogatory tradeline belonging to Plaintiff. Trans Union knew, or should have known, that such reports contained such erroneous information.

53. Trans Union willfully (or, in the alternative, negligently) violated NY GBL § 380-j(e) by failing to maintain reasonable procedures designed to assure the maximum possible accuracy of the information concerning Plaintiff in the consumer reports it prepared.

54. Trans Union willfully (or, in the alternative, negligently) violated NY GBL § 380-f by failing to conduct a reasonable reinvestigation of Plaintiff's disputes of the Account.

55. Trans Union willfully (or, in the alternative, negligently) violated NY GBL §§ 380-f(b) and (d) by failing to delete or modify the disputed information regarding the Account after failing to verify its completeness and accuracy.

56. Accordingly, Trans Union is liable to Plaintiff for actual and punitive damages in an amount to be determined by the trier of fact, as well as for Plaintiff's litigation costs and reasonable attorney's fees, pursuant to N.Y. GBL §§ 380-l and 380-m.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendants, and award the following relief:

(a) Actual damages in an amount to be determined at trial;

(b) Statutory damages pursuant to 15 U.S.C. § 1681n;

(c) Punitive damages pursuant to 15 U.S.C. § 1681n and N.Y. GBL § 380-l, in an amount to be determined at trial;

(d) An injunction requiring Defendants to correct or remove the inaccurate information associated with the Account from Plaintiff's consumer files, and to implement policies and procedures designed to ensure future compliance with the FCRA and the NY GBL;

(e) Plaintiff's reasonable attorney's fees and costs incurred in this action, pursuant to 15 U.S.C. §§ 1681n and 1681o, and N.Y. GBL §§ 380-l and 380-m; and

(f) Such other and further legal and equitable relief as this Court may deem just and proper.

**THE PLAINTIFF DEMANDS A JURY TRIAL ON ALL CAUSES OF ACTION ASSERTED HEREIN.**

Dated: September 25, 2026

Respectfully submitted,

Kevin C. Mallon
Mallon Consumer Law Group, PLLC
550 Kinderkamack Road, Suite 117
Oradell, NJ 07649
(917) 734-6815
kmallon@consumerprotectionfirm.com
*Attorneys for the Plaintiff*